**FILED**

DEC 2 1 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deput

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  Plaintiff,<br>vs.<br><br>LIDIA LIDETH ORTIZ,<br><br>  Defendant. | A03-109-01 CR (RRB/JDR)<br>[ECF 3:03-00109-01-cr-RRB-JDR]<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO VACATE<br>§ 2255**<br><br>(Docket No. 214/238) |

Defendant **Lidia Lideth Ortiz** moves pursuant to 28 U.S.C. § 2255 to vacate her sentence. Docket No. 214. The defendant initially filed a motion to vacate pro se on May 31, 2005 at Docket No. 214. After the defendant was appointed counsel she filed a supplemental memorandum at Docket No. 238. The government filed an opposition, Docket No. 245. An evidentiary hearing was conducted on December 7, 2005. The parties submitted written summations. Docket

254

Nos. 250 (government) and 251 (defendant). **Upon due consideration of the evidence adduced and the arguments of counsel, the magistrate judge recommends that the motion to vacate be DENIED.**

### Defendant's Allegations

Ortiz alleges that she received ineffective assistance of counsel from her trial attorney, Burke Wonnell who denied her the right to appeal, and that her pleas of guilty were not made voluntarily, knowingly, and with an understanding of the consequences of her actions.

The initial motion to vacate alleged that the defendant's trial attorney was so ineffective that he never helped her in the process of her case (pg. 5). An attached affidavit of the defendant averred that her attorney never explained to her that she had the right to appeal, that after she requested him to appeal her case he said there was nothing to appeal; that the government promised her that she was not going to be deported; that her attorney did not give her any documents concerning the criminal case and told her that it was too dangerous for her to have any documents in any detail; that her attorney told her she should plead guilty and would get less time and to answer all of the questions asked by the judge when she pled guilty.

Along with her pro se § 2255 Motion, Ortiz filed a Memorandum of Points and Authorities raising issues under <u>Apprendi v. New Jersey</u>, 530 U.S. 466,

120 S.Ct. 2348 (2000) as defined (sic) by Blakely v. Washington, 542 U.S.296, 124 S.Ct 2531 (2004) and extended to the Federal Sentencing Guidelines by United States v. Booker/Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005). At the evidentiary hearing on the motion to vacate the defendant withdrew this ground for relief.

### Procedural History and Background

Ortiz was charged in a criminal complaint on May 27, 2003. *See* Case No. A03-153 MJ. A preliminary hearing was held and she was bound over for presentment of the case to the federal grand jury.

Following her arrest Ortiz immediately agreed to cooperate with law enforcement officers. She made consensually monitored and recorded telephone calls to one of her sources for crack cocaine. After appearing in court on the complaint Ortiz was appointed counsel, Burke Wonnell. On June 17, 2003 a multi-count indictment charging the defendant and three co-defendants with violating the federal drug laws was filed. *See* Docket No. 1 in the instant case. Specifically, Ortiz was charged with drug conspiracy (Count 1), distribution of a controlled substance (Counts 2, 3 and 8), distribution or possession with intent to distribute a controlled substance (Counts 4, 5, 7, 9, 10), distribution of a controlled substance (Counts 11 and 13), and money laundering (Count 14). Counts 15 and 16 sought criminal forfeiture of named property. Under the indictment she faced a statutory mandatory

minimum sentence of ten years and a non-adjusted Sentencing Guideline range of 168 to 210 months in prison.

On June 30, 2003 the court appointed Yolanda Salazar-Hobrough to serve as an English/Spanish interpreter for all of the defendants. Docket No. 13. The government provided Mr. Wonnell with a significant volume of discovery including the substance of post-arrest admissions which she had made to law enforcement officers and video tapes and/or audio tapes which had recorded Ortiz during pre-transaction negotiations, including Ortiz selling crack-cocaine at the direction of the government.

**Findings of Fact**

On June 2, 2003, Ortiz appeared before a United States Magistrate Judge for an initial appearance on a complaint. As part of that hearing with the assistance of an interpreter the complaint was read to Ortiz and she was advised of her general rights, the charges and the penalties. Ortiz was found eligible for court-appointed counsel and the court appointed Burke Wonnell, Esq., as her counsel.

After graduating from law school in 1996 Mr. Wonnell served as a city prosecutor for the Municipality of Anchorage and then entered private practice about 1998. He has engaged in the practice of federal criminal law since 1999 and has served on the Criminal Justice Panel of the Federal Court since 2000. Mr. Wonnell discussed the criminal charges and sentencing guidelines with Ortiz using an

interpreter, Mary Osbourne, whom he took to the jail facility where Ortiz was incarcerated. Ortiz appeared to understand the communications to and from her attorney through the use of Ms. Osborne.

Soon after his appointment in this case Mr. Wonnell evaluated the strength of the government's case against Ortiz. Knowing that she had already cooperated with the government, he advised her to continue cooperating in an attempt to reduce her sentencing exposure. Mr. Wonnell negotiated a plea agreement on behalf of Ortiz which provided for her to continue cooperation in exchange for the government's recommendation for a substantial assistance reduction motion to be filed by the United States Attorney prior to her sentencing. Mr. Wonnell also negotiated a plea agreement on behalf of Ms. Ortiz. He discussed the plea agreement with Ms. Ortiz through an interpreter as well as the ramifications of her signing the plea agreement. He discussed with Ms. Ortiz the benefits and detriments of going forward with a trial as an alternative to plea bargaining. The attorney explained to Ms. Ortiz that she was charged with an offense carrying a potential sentence of ten years to life and that she was video taped by government agents depicting her selling crack-cocaine to an undercover agent.

Immediately after being arrested on May 29, 2003 the police told Ms. Ortiz that she had been under investigation for some time. She acknowledged to the police that she had told her "source" that the drugs could be placed in her vehicle.

The police told Ms. Ortiz upon her arrest that she was in a lot of trouble and that if she cooperated she could help herself.

I am satisfied from the evidence that Mr. Wonnell had the Indictment translated into Spanish and read to Ortiz. He discussed with her the nature of the charges and the applicable sentencing guidelines. Ms. Ortiz testified at the evidentiary hearing that Mr. Wonnell explained the charges to her, and told her that if she cooperated with the government they could help her. She told him that she had already been cooperating. At the time of her sentencing in February 2005 Blakley had been had decided. Mr. Wonnell explained to the best of his ability the effect the sentencing guidelines would have based upon the quantity of drugs involved in the charges. The government had a strong case against Ms. Ortiz. Several sales had been video recorded and other contacts with an informant had been audio recorded. Mr. Wonnell identified no constitutional problems in the government's handling of the case that might give rise to a motion to suppress evidence, and none have been identified to date. Mr. Wonnell explained to Ortiz that her deportation was "fairly certain" if she was convicted regardless of whether by plea or by a jury at trial. Mr. Wonnell strategized that under the circumstances Ms. Ortiz was better off continuing to cooperate with the government rather than going to trial on all the charges.

Ms. Ortiz agreed to continue cooperating with the government. Ms. Ortiz met with the government agents including AUSA Joe Bottini on several occasions. Mr. Wonnell and a Spanish-English interpreter were present. Ortiz agreed to help the government in the investigation against several people. In one debriefing, Ortiz was questioned about events occurring before her arrest and sales she allegedly made. The government asked Ortiz why she had not earlier mentioned a particular sale. Her response was that the agents had not asked her about that particular event. The government was not convinced that Ortiz was being forthright about where the drug proceeds had gone or had come from. Initially, the government declined to file a 5K motion for downward departure but after additional debriefing of her the government agreed to make such a motion. Mr. Wonnell explained to Ms. Ortiz that a judge would determine the final sentence but normally the court follows the government's recommendation in this regard.

Ortiz repeatedly called Mr. Wonnell's legal office informing them the government did not intend to file a 5K Motion for Departure. She wanted to know what Mr. Wonnell was doing about this. During the plea bargain negotiations the government wanted Ortiz to serve a longer time than the parties eventually agreed to. Mr. Wonnell successfully advocated for her to serve a prison term of under half of the lower guideline range. Such sentence was less than the time received by a co-defendant but not as much off as requested by her attorney. One of the items

bargained for under the downward departure was the defendant's agreement to forfeit any interest in an automobile identified in Count 15 or 16 of the Indictment. The plea bargain provided that the government agreed to seek dismissal of the remaining charges against Ortiz if she pled guilty to Counts 1, 11 and 14.

The Presentence Report prepared November 17, 2003 and revised February 25, 2004 described the offense conduct with some particularity. The Presentence Report calculated an adjusted offense level of 34 with an adjustment of two points for acceptance of responsibility for a total offense level of 32. Based upon an assessment of criminal history points the Presentence Report placed the defendant in criminal history category II.

On June 29, 2004 Ortiz moved to continue the imposition of sentencing. Docket No. 152. Mr. Wonnell filed a sentencing memorandum and a motion for downward departure on Ortiz's behalf on February 3, 2005. Docket No. 198. Sentencing was continued to provide additional time for Ortiz to seek a 5K downward departure motion recommendation from the government based upon her additional cooperation.

Sentencing was delayed because Ms. Ortiz was still cooperating under cover with the government. Ms. Ortiz recalls meeting with the probation officer regarding the preparation of her presentence report in the presence of her attorney Mr. Wonnell. Sentencing occurred on February 10, 2005. Ortiz pled guilty to Counts

1, 11 and 14. The court dismissed Counts 2 through 5, 7 through 10, 13, 15 and 16 against Ortiz. On June 1, 2005 she filed a motion to vacate. Docket No. 214.

Mr. Wonnell candidly admits that Ms. Ortiz was frequently confused by the legal process. Mr. Wonnell perceived the difficulty Ms. Ortiz had in understanding the legal process and procedures. Ms. Ortiz appeared unsure about what to say in response to questions she might be asked by the court at sentencing. He took the time to explain the situation to her. Mr. Wonnell recalled Ortiz calling his legal office and leaving a message about filing an appeal after the sentencing had occurred. Mr. Wonnell contacted Mary Osbourne and visited Ms. Ortiz within ten days from the date of the judgment to discuss the issue of filing an appeal. Mr. Wonnell explained to Ortiz that the Ninth Circuit would not hear the case *de novo* and reminded her of the waiver of appeal language in the plea agreement. Mr. Wonnell informed Ms. Ortiz that if she were successful in setting aside her conviction the remedy would be for her to go to trial. According to Mr. Wonnell Ms. Ortiz elected not to appeal.

The Plea Agreement contains an appellate waiver clause. The formal agreement stated that the government could withdraw from the agreement if the sentencing judge departed below fifty percent of the recommended guideline range. Ms. Ortiz was never called upon to testify before the grand jury or a petit trial. Absent the government's agreement to file a downward departure motion Ortiz would

have been facing a sentence of at least 120 months in custody. When Mr. Wonnell explained the appellate rights to Ms. Ortiz he got the impression that Ortiz thought that the Court of Appeals could review the case for its "reasonableness of sentence." Mr. Wonnell explained that the remedy for having the sentence set aside would be a withdrawal of the guilty pleas and she would have to go trial. Ms. Ortiz then remarked to her attorney: "Then, there is no point in approaching this?" Mr. Wonnell responded: "Yes, that is my opinion."

Ms. Ortiz claims she asked Mr. Wonnell regularly for documents so she could read about her case. Mr. Wonnell told her it was not right for her to have documents in hand (presumably referring to documents at the jail facility). On one occasion prior to the change of plea hearing Ms. Ortiz called Wonnell's law office and informed the secretary who speaks Spanish that she wanted Mr. Wonnell to visit her in jail. She testified "they" could not find "an interpreter." According to Ortiz she told the secretary that she wanted to change attorneys because she did not have much contact with her attorney Mr. Wonnell. Ms. Ortiz admits that she met with her attorney three or four times including at least once after sentencing. I find that Mr. Wonnell had adequate meetings and communication with his client. She testified at the evidentiary hearing that Mr. Wonnell explained that if she withdrew her plea of guilty it would go against the will of the judges. I find no corroborating evidence for this statement and reject it as untrue.

At the § 2255 evidentiary hearing Ortiz stated that she understood that she could have gone to prison for ten years and that it was up to the judge to impose the sentence. She explains in her frustrations about her attorney not visiting her frequently enough that during these times she "left it up to God." She acknowledges that Mr. Wonnell answered all of her questions although it is clear from the evidentiary hearing that she did not like all of the answers she received. Ms. Ortiz concluded that her attorney could have tried harder to get a lower sentence and she does not believe that she received the lowest sentence possible. She claims she filed a motion to vacate because she was not happy with the sentence she received. She understood that waiving her right to appeal meant that she could not take an appeal.

**The Plea Agreement**

The Plea Agreement explained that by pleading guilty to Counts 15 and 16 the defendant abandoned any right, title or interest she may have in the $7,230 and Honda Civic described in those counts. In exchange for the pleas of guilty to Counts 1, 11, 14, 15 and 16 the government agreed to dismiss the remaining criminal charges in the indictment against Ortiz. The government agreed to recommend an adjustment for acceptance of responsibility and to move for an additional one level adjustment for acceptance of responsibility and a sentence at the low end of the applicable guideline range. In return the defendant agreed to

cooperate with the United States in its investigation and prosecution of others. The agreement provided that the court could not impose a sentence less than fifty percent of the low end of the otherwise applicable guideline range if the government moved for and the court granted a substantial assistance departure.

The document stated that it contained the complete plea agreement between the parties. Under the plea agreement the defendant could not seek any downward departures not set forth in the agreement. The agreement described what the defendant agreed to do to avoid being found in breach of the agreement. The agreement explained that the government had the right to exercise good faith in determining whether she had complied with the terms of the agreement and met the government's criteria for a substantial assistance departure motion. The agreement stated that the United States did not guarantee the defendant a motion for substantial assistance downward departure under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Federal Criminal Rule 35.

The Plea Agreement explained that even if the United States moved for a substantial assistance departure, the court was not bound to grant that motion. The agreement expressly stated it did not provide any use immunity to the defendant in a prosecution for any future acts. The agreement contained standard language of waivers of appellate and collateral attack rights. The government agreed to recommend a sentence of imprisonment at the low end of the total adjusted

guideline's sentence range unless the government moved for a downward departure on the defendant's behalf. The agreement contained a section advising of the maximum statutory penalties for those counts in which the defendant was pleading guilty.

Section V of the Agreement contains guideline calculations, a section describing the affect of the defendant's role in the offense on the guideline calculations as well as a discussion of the acceptance of responsibility guidelines. It described the elements of each of the offenses to which the defendant was pleading guilty, and contained a factual basis for the pleas.

Part IX of the Agreement addresses the defendant's understanding of the terms of the plea agreement. It specifically states that attorney Burke Wonnell has explained the charges to which the defendant is pleading guilty and the necessary elements, and the consequences of her plea. The agreement states that the defendant admits the allegations of fact against her and that she does not contest the entry of a preliminary order of forfeiture or a final decree of forfeiture affecting her rights in the property.

The Agreement specifically states that her attorney has investigated the case and followed up on any information and issues she has raised with her attorney to her satisfaction and that her attorney has taken the time to fully explain the legal and factual issues involved in the case to her satisfaction. The agreement

acknowledges that the defendant has discussed with her attorney the sentencing estimates prepared by the government and that she understands they are not binding on any party. The agreement states that no one, including her attorney, can guarantee the outcome of her case or what sentence the court may impose if she pleads guilty.

The Agreement acknowledges that the United States has not guaranteed the defendant a motion for substantial assistance departure. The Agreement acknowledges that by pleading guilty she may loose or be denied federal benefits, loans, grants, licenses, welfare and food stamps. By signing the Agreement Ortiz disclaimed and abandoned any right, title or interest in the forfeiture assets described in Counts 15 and 16.

### Standard for Ineffective Counsel Claim

Strickland v. Washington, 466 U.S. 668 (1984) establishes a two prong test for determining whether counsel has rendered constitutionally ineffective assistance of counsel. Essentially the defendant must show that his attorney's representation was deficient and that this deficiency was prejudicial. *Id.* at 693. The burden is upon the defendant to establish that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness." Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002). Strickland teaches that judicial scrutiny of a counsel's performance is highly deferential and the court should make every

effort to eliminate the distorting effect of hindsight and to evaluate the conduct from counsel's perspective at the time. 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* To establish prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* Thus, the defendant must show more than an error that could conceivably have some effect on the outcome of the proceeding. Because the defendant must prove both deficient representation and resulting prejudice, the court may address either or both prongs in determining the motion to vacate premised on such grounds. The court need not determine whether counsel's performance was deficient if such alleged deficiency could not have resulted in prejudice under the test.

### Discussion

Mr. Wonnell negotiated a Plea Agreement on behalf of Ortiz which provided for her continued cooperation in exchange for the possibility of a substantial assistance reduction motion filed by the government prior to her sentencing. He assisted her efforts to cooperate with the government by attending meetings where she was debriefed and by arguing vigorously that she was entitled to the substantial assistance reduction motion as a result of her efforts. From the record it appears

that Mr. Wonnell was successful in reducing Ortiz's duration of incarceration, particularly compared to what it would likely have been had she chosen to go to trial.

Ortiz never indicated during the contacts with her attorney that she could not understand what Mr. Wonnell was explaining to her or advising her through the interpreter, Ms. Osbourne. She never told Judge Beistline at the change of plea hearing or at sentencing that she did not understand the proceedings or that she was not satisfied with her attorney's representation. To the contrary she told Judge Beistline under oath that she was satisfied with Mr. Wonnell's representation of her.

At the change of plea hearing the district judge carefully explained the essential terms of the plea agreement to Ms. Ortiz including her waiver of the right to appeal. The judge explained the applicable mandatory minimum and maximum penalties and ascertained from Ortiz that her attorney had gone over the applicable sentencing guideline provisions with her. Her attorney successfully obtained a downward adjustment of her criminal history category from II to I. This lowered the adjusted Guideline range. She was ultimately sentenced to serve to 65 months in custody. Docket No. 201.

From the evidence I find that Mr. Wonnell adequately consulted with Ms. Ortiz concerning the potential sentencing guideline sentence ranges applicable with or without her cooperation with the government and/or the government's motion for substantial assistance downward departure. I conclude that Mr. Wonnell adequately

provided information to her about the status of her case throughout his representation. Although he may not have provided copies of important documents to her to retain in the jail facility, because of her cooperation with the government such documents could have exposed her to retaliation or threats against her had another inmate seen or obtained possession of the documents. The evidence convinces me that Mr. Wonnell adequately explained to her the decision of whether to go to trial or continue cooperating with the government and that such decision was left to her to make. I am satisfied from the evidence that Mr. Wonnell explained to her the reason he concluded there was no issue on which to appeal and that Ms. Ortiz acquiesced in the decision not to appeal while there was still time left to file a timely notice of appeal.

Ortiz stated under oath at her change of plea hearing that her attorney had gone over the sentencing guidelines with her. She un-hesitantly told the judge that she was satisfied with her attorney's representation of her in response to his question. I find no evidence to support her bald statement in her affidavit that she was promised that she would not be deported. To the contrary, I accept Mr. Wonnell's testimony that he advised her that she would likely be deported regardless of whether she went to trial.

Ortiz has not met her burden of proving that her counsel's assistance was neither reasonable nor the result of sound trial strategy. This burden is upon

the defendant. See Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001), cert denied 535 U.S. 935 (2002). There is no reasonable probability that she would not have been convicted or have received a lower sentence than she did but for her attorney's representation. "It is not enough [for the defendant] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693. Furthermore, Ortiz has not demonstrated why her attorney should have acted differently on her behalf. She has not met either test under Strickland because she has not shown that Mr. Wonnell made errors so serious that he was not functioning as the "counsel" guaranteed to a defendant by the Sixth Amendment. Nor has she established prejudice by showing a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceedings would have been different. For the foregoing reasons the motion to vacate should be denied. IT IS SO RECOMMENDED.

DATED this 20th day of December, 2005, at Anchorage, Alaska.

John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, January 10, 2006,** to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, January 17, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).



A03-0109--CR (RRB)     on   12/21/05

M. AHEARN (HAGANS)
J. BOTTINI (US ATTY)
JUDGE BEISTLINE